**ROOS et v H. W. ROOS CO. et**

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5641.  Decided Nov. 4, 1940.

Jerome Goldman, Cincinnati, for Margaret Grace Roos, individually and as Trustee.

Paxton & Seasongood, Cincinnati, for The Central Trust Co.

Hugh J. Baker, Jr., for Baker Roos, Inc.

## OPINION

By ROSS, J.

This matter is presented to this court upon an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Hamilton County in a proceeding for a receiver of The H. W. Roos Company, filed by Henry W. Roos, its president on February 20, 1933, such judgment being decisive of issues presented by an application of The Central Trust Company to the court, praying that certain patents should be ordered transferred to it as purchaser of the personal property of the Roos Company at the receiver's sale.

Some brief history of the proceedings in the trial court and this court must be given in order that an intelligent approach to a consideration of the case may be made.

### I.

### HISTORY OF THE CASE.

It is not intended here to give any detailed statement of the facts presented to this court here upon appeal.

On February 20, 1933, Henry W. Roos was appointed joint receiver with Frank J. Romell of the assets of The H. W. Roos Company.

The business of the company consisted in the manufacture and sale of certain appliances for shoring up floors during the process of construction, and forms for the deposit of concrete used to form floors and pillars of buildings.

These various appliances were covered by patents and licenses which Henry W. Roos secured upon same.

After the receivership had proceeded for some time (Spring, 1934) The Central Trust Company, which had made loans to the receivers, became aware that such patents and licenses were not owned by the Roos Company and demand was made upon Roos for the transfer to the Roos Company and the receivers of all patents and licenses incidental to the Roos Company business. Roos withdrew as co-receiver May 23rd, 1934, and before July, 9th, 1934, transferred to the Roos Company and the receivers four patents and a license, and The Trust Company was so notified.

Sale of the personal property of the Roos Company was ordered June 17th, 1935, in the entry Roos was ordered to transfer all patents to the Roos Company and the receivers, and on June 18th, 1935 The Trust Company purchased all of the personal property of the Roos Company from the receivers. On June 29th, 1935, the sale was confirmed.

On July 1st, 1935, The Trust Company filed an application to be released from the sale of the personal property of the Roos Company, for the reason that in the hearing to confirm the sale on the 29th of June, 1935, Grace G. Roos, the wife of Henry W. Roos, had appeared and in open court objected to such confirmation for the reason that at the time Roos made the transfer of the four patents and license to the Roos Company and receivers he was incompetent to do so by reason of mental disability.

Grace G. Roos requested leave to file an independent suit against the receivers which was denied, but she was given leave to be made a party defendant in the proceedings and file an intervening petition, which she declined to file.

After a hearing in the trial court, it was determined by the entry of the Court July 8th, 1935, the transfer of the four patents and license was valid and the application of the Trust Company for release from the sale was denied.

Grace G. Roos appealed from this judgment and the order was affirmed by this Court.

Previous to the sale of the personal assets of the Roos Company, the Trust Company had made arrangements with

the Baker Roos, Inc., to re-purchase such assets from it and this sale took place.

Sometime during the year 1937 The Trust Company was advised that the four patents and license transferred by Roos to the Roos Company and the receivers in July, 1934 were only a small part of the patents under which the Roos Company carried on its business and that there were fifteen other patents necessary to be held by the purchaser of the business of the H. W. Roos Company if it would operate fully as the Roos Company had operated.

Demand was made upon the guardian, November 23rd, 1937 for the transfer of such patents, and the demand was refused.

The Trust Company then, on February 8th, 1938, made an application to the trial court to cause the guardian to comply with the former order of the court of June 17th, 1935, in which Roos had been ordered to transfer all patents to the Roos Company and the receivers. After the filing of such application, the Trust Company learned that on December 24th, 1932 Roos had executed an assignment of all patents and licenses then in his name and including the four patents and license transferred to the Roos Company and receivers in July, 1934, as well as the fifteen patents later discovered in 1937 to be incidental to the carrying on of the business of the Roos Company—to his daughter, Margaret Grace Roos, in trust for himself and after his death to others. This trust agreement was revocable. Attempt was made to make the daughter trustee a party to the proceedings and the trial court considered this was done. The guardian of Roos was already a party. After hearing, the trial court found by its entry of March 29th, 1939, that the fifteen additional patents were included in the grant of Roos to the Roos Company and the receivers, and were within the purview of its order of June 17th, 1935, and ordered that the guardian execute the necessary transfers of title to such additional patents. The court also decreed that the assignment of the daughter, Margaret Grace Roos, in trust should be declared null and void and cancelled as to such additional fifteen patents.

From this order, Margaret Grace Roos filed an appeal to this Court basing her claim upon the failure of the Court to grant her motion to quash the service of summons upon her. This court sustained her contention and entered judgment in her favor.

Grace G. Roos filed an appeal on law and fact from this last decree of the trial court, which appeal is the subject of the instant consideration.

After several preliminary hearings in this court in order that all matters might be finally adjudicated—by the consent of all counsel—Margaret Grace Roos, as trustee, and the Baker Roos, Inc., voluntarily entered their appearances, so that now this court has before it all necessary and proper parties to a final adjudication of this long and tedious litigation.

## PLEADINGS.

The issues of fact and law are initiated by a pleading filed by The Central Trust Company in a proceeding originally instituted by Henry W. Roos in which a receiver was sought for the H. W. Roos Company. Roos and Frank J. Romell were appointed receivers. Roos later withdrew and Romell has since died after the sale of the assets of the Company to The Central Trust Company, Roos becoming mentally unbalanced, his wife, Grace W. Roos was appointed as his guardian on August 18th, 1936.

In the application of The Central Trust Company, it is alleged that the Common Pleas Court in the receivership proceedings had on June 17th, 1935, ordered the sale of all the personal property of the company; that The Central Trust Company became the purchaser of all of such personal property; that this sale was confirmed on July 8th, 1935.

It is further alleged that The H. W. Roos Company also executed a bill of sale to The Central Trust Company of all of such personal property of the Company, and that in the bill of sale

of the receivers and that of the company, the personal property so conveyed was described as:

"All of the personal property of The H. W. Roos Company in and about its plant at No. 2036 Dana Avenue, Cincinnati, Ohio, and in various warehouses throughout the country, including, by way of example only, all inventories, machinery, tools, patterns, dies, models, furniture and fixtures, and all patents and patent licenses (as, for example, for Rooshors, Column Clamps, Roos Speed Forms, etc.), whether in the name of Henry W. Roos or in the name of The H. W. Roos Company, or in the name of the Receiver thereof, together with all trademarks and the good will of The H. W. Roos Company and the right to the use of said corporation name, but excluding cash, accounts receivable and real estate."

It is further alleged that the applicant "has recently discovered that a number of letters patent belonging to and being the property of The H. W. Roos Company at the time of said order, sale, and conveyance but registered in the Patent Office of the United States in the name of the plaintiff, Henry W. Roos individually were not delivered or formally assigned to the applicant by the receiver, the Company or Roos".

Attached to the application is a list of fifteen patents claimed to be covered by the complaint.

In the application of the Trust Company also is set forth a portion of the order of the Court of June 17, 1935:

"It is further ordered that the plaintiff, Henry W. Roos, and the defendant, The H. W. Roos Company, join in the execution of any assignment of patents and patent licenses or join in the execution of any bill of sale for any or all of the personal property herein referred to, 'if called upon to do so by the receiver herein and/or The Ceneral Trust Company."

In the application also is alleged the guardianship of Roos and a demand upon the guardian for assignment of the patents and her refusal of such demand.

The prayer of the application is to require the guardian "to perform all the acts and do all the things and execute and deliver all instruments which the said Henry W. Roos has heretofore been ordered to perform, execute and deliver by the prior orders of this court", and particularly to assign and deliver the fifteen patents in question.

To the application of The Trust Company, the guardian of Roos, his wife, Grace G. Roos filed an answer in which it was advanced that the matter of the title of the patents was not proper subject matter for the proceeding and pleadings, that the patents in question were not the property of The H. W. Roos Company, but were the property of Roos individually; that the patents were not included in the sale by the receiver to the Trust Company, that the Trust Company is not the real party in interest, in that it has in turn sold the assets bought at the receiver's sale to Baker Roos, Inc., that the Trust Company and the receiver released Roos from any obligation to transfer the patents, that the patents in question were long prior to the receiver's sale transferred in Trust by Roos to his daughter, Margaret Grace Roos, and that at the time of the sale there were no patents in the name of Henry W. Roos, and, finally, that the Trust Company and Baker Roos, Inc. are each guilty of laches, and do not come seeking equity with "clean hands".

To this answer of the Guardian, the Trust Company filed a reply, in which it claimed that the patents in question were in equity the property of The H. W. Roos Company when the personal property of the company was purchased by the Trust Company and that prior thereto, on May 7th, 1934, Henry W. Roos had agreed with the Trust Company and the receiver for a valuable consideration "to turn over and assign the patents to the Roos Company and its receiver. It is admitted in the reply that a release and

agreement were executed and delivered by the Trust Company under date of March 10, 1936, but it is also claimed that the four patents and one patent license mentioned in such release and agreement were not all the patents and licenses to which the H. W. Roos Company was entitled, and it is stated that such release "was executed after the sole receiver had transferred and assigned to appellee (Trust Company) all his interest and claim to the patents described in appellee's application."

Referring again to the agreement to transfer all patents, it is alleged that the patents constituting the subject of the Trust Company's application were used or embodied inventions used in the business of the H. W. Roos Company, and that it was understood and agreed between the Trust Company and Roos that in consideration of withholding demand for immediate payment of demand loans to the receiver all such patents were to be assigned to the Roos Company and the receiver, that the Trust Company did refrain from demanding immediate payment of such loans and that, therefore, in equity all such patents became the property of the Roos Company and receivers in conformity to such agreement.

It is further alleged that pursuant to such agreement on May 8th, 1934, Henry W. Roos did assign to The H. W. Roos Company and the receivers four patents and a license and represented that such four patents and license constituted all of the patents and licenses in the name of H. W. Roos "embodying inventions used in the company's business", and that H. W. Roos did not disclose to his co-receiver, the attorneys for the receivers, the Trust Company, or to the Court the existence of the other patents.

It is further alleged that the Trust Company purchased at the receiver's sale all the personal property of the H. W. Roos Company including all patents, and licenses, used in connection with the business of the H. W. Roos Company, that it would not have purchased such property if it had not be-

lieved all of such patents and licenses were included in the sale, that it relied upon the representation of H. W. Roos that all such patents were included, and that H. W. Roos knew this, and that although the Guardian of Roos objected to the confirmation of such sale, the existence of the other patents was not disclosed to any one, and that such guardian is now estopped to claim any interest therein.

In meeting the allegation of the answer of the Guardian that all of such additional patents and licenses were conveyed in trust to the daughter of Roos the Trust Company alleges that such conveyance was without consideration and was made at a time when Roos knew that the Roos Company was in "failing financial circumstances", that such trust agreement was revocable, that such conveyance also included the four patents and license which Roos conveyed to the Roos Company and receivers upon demand, and that the power of revocation so exercised should apply to the additional patents now withheld, and that the assignment to the Trustee daughter were not recorded within three months of the assignment to the Trustee, nor were they so recorded until after the year 1937, when a hearing upon the Trust Company's application was in progress in the trial court, and that the Trust Company having purchased all the personal property of the Roos Company on July 18th, 1935, for a valuable consideration, without notice of such trust assignment, that such trust conveyance is void against such purchasers by virtue of the provisions of §4898 R. S. U. S., and that three of such fifteen patents were not so transferred in such trust agreement.

As to the defense of laches, the Trust Company claims it had no knowledge of the existence of the additional patents now claimed by it by virtue of the bills of sale executed by the receivers and the H. W. Roos Company until January, 1937, and that it made demand therefor in November, 1937.

The Trust Company admits that at the time of the sale of the assets of the H. W. Roos Company by the receivers,

July 18, 1935, it had arranged with Baker Roos, Inc., to re-purchase all of such personal property, when purchased by the Trust Company from the receivers and denies that at that time there was any agreement that the receiver of the Roos Company was to be a director in the corporation, Baker Roos, Inc.

In other respects the reply is a denial of such new matter as is alleged in the answer of the guardian.

To the application of the Trust Company, the Trustee, Margaret Grace Roos, filed an answer in which it was urged that it was improper to try the title to the fifteen patents through the application in this proceeding, that no cause of action was alleged justifying the relief prayed for in the application, that the patents described in the application were never at any time the property of The H. W. Roos Company, but, on the contrary, were the property of Henry W. Roos and of Margaret Grace Roos, as Trustee, that The Central Trust Company is not the real party in interest and that the Trust Company and Baker Roos, Inc., are guilty of laches and do not come before the court with "clean hands".

The reply of the Trust Company denied all allegations of new matter and amended the prayer of the application to request that Margaret Grace Roos, who by reply is alleged to be Trustee in possession of the patents, be required to execute and deliver to the Trust Company appropriate evidence of title to twelve of the fifteen patents.

The reply to the answer of Margaret Grace Roos, Trustee, further alleges that it was not until the hearing upon the application had been in progress for some time in the trial court that the Trust Company learned of the execution of the revocable trust agreement by Roos to his daughter, Margaret Grace Roos in December, 1932, covering twelve of the patents and that such agreement was gratuitous, and invalid as against the Trust Company as purchaser of the personal property at the receiver's sale, and also being contrary to the provisions of the United States Patent Recording Statute. After the Trust Company purchased the personal property of The H. W. Roos Company it sold the same to the Baker Roos, Inc.

In this court, prior to the hearing of the case upon appeal, Baker Roos, Inc., and the Trustee, Margaret Grace Roos, voluntarily entered their appearance and filed answers.

The answer of Baker Roos, Inc., alleges that it has demanded that the Trust Company convey to it the fifteen patents in question and joins in the prayer for the relief sought by the Trust Company.

### III.

### FACTS.

It will not be necessary in stating the facts involved in a consideration of the appeal, to repeat any of the matters stated in the "History of the Case". This statement is supplemental thereto.

Henry W. Roos was both an inventor and a business man. He invented a number of appliances for facilitating the erection of concrete structures. In general, these appliances were designed to furnish forms for concrete and shores for support of floors. He organized and became president and general manager of The H. W. Roos Company, which engaged in the business of manufacturing these appliances under the patents which Roos secured upon his inventions and a license from another source.

This corporation was in law a distinct entity from Roos. Some one-third of its stock was owned by others than Roos. However, it is clear from the evidence that it was wholly and completely dominated by Roos and that he could have operated just as efficiently if it had not been called into being to protect his personal interests.

None of the patents or licenses of inventions were transferred outright to the corporation. Contracts and renewals thereof were from time to time executed by Roos, whereby the Company was given the right to manufacture appliances according to the pat-

ents and for which right Roos received a very substantial and adequate royalty.

In the early stages of the industry, the Roos Company acquired the right to use four major patents and a license. On these, the Company paid royalties to Roos, in addition to a cash payment in some cases. The agreement with the company provided that as supplemental or new inventions were made, the right to use them should be transferred to the Company.

Whether such transfers of supplemental patents were formally made is immaterial. Unquestionably, from time to time modifications were made by the Roos Company in its manufacture of the appliances. It is equally clear that the Company paid nothing more in the way of cash or royalty for the additional patent rights. It is also perfectly clear that at no time did the Roos Company have more than a bare permission to use any of the patents, either the earlier or the later ones. The Roos Company at no time owned these patents or licenses. They were not a part of the assets of the Company.

From time to time, however, the Company borrowed money from the Central Trust Company. In the financial statements to the Trust Company, the entries used conveyed the natural inference that the patents under which the Company was operating were the property of the corporation. There can be no doubt that the Trust Company labored under this justifiable impression until it became advised by the co-receiver of Roos that royalties were being paid to Roos individually. This Court also cannot justify any other conclusion but that Henry W. Roos was perfectly aware that the Trust Company so understood the matter.

All of these patents were registered in the name of Henry W. Roos with the Registrar of Patents.

Under date of December 24, 1932, Roos transferred and assigned all his interest in sixteen patents to his daughter, Margaret Grace Roos in trust. The assignment was revocable and provided for a beneficial interest in Roos during his life and for beneficial interests to others after his death. No available evidence of this trust agreement with his daughter except the instrument existed until the year, 1938, when the application, which furnishes the basis of this case, was being heard in the trial court. This trust agreement was then over four years later recorded, after claim thereunder had been made by the trustee daughter. It is to be noted that this was also after the Trust Company was making claim for all the patents held by Roos, and some three years after the sale of the personal property of the Roos Company.

Approximately three months after the assignment in trust to the daughter, on February 20, 1933, Roos petitioned the Common Pleas Court for a receiver to protect the Roos Company from creditors, and, on the same day, that court in the exercise of its powers in equity appointed Roos and Frank J. Romell co-receivers.

The Central Trust Company was solicited to, and did, extend credit to the receivers loaning them in all $10,000.00. Some year or so after the appointment of the receivers, Romell called the attention of the Trust Company to the fact that the Roos Company under its arrangement with Roos was obligated to pay royalties to Roos and that therefore the Company did not own the patents as was up to that time supposed.

Charles W. Dupuis of the Trust Company then, on April 19, 1934, wrote the receivers calling attention to the fact that the receivers' report covering the twelve months ending February 28th, 1934, showed that royalties amounting to approximately 10% of the gross receipts had during the past year been paid to Henry W. Roos, that the patents were not as supposed, the property of the Company, and that "If the creditors are to be paid and any equity is to be realized for the stockholders we feel that the following should be accomplished at once."

Among the things mentioned as required to be accomplished was:

"1. All patents now in the name of H. W. Roos should be assigned outright to the corporation and all royalty pay-

ments to H. W. Roos should be discontinued."

In this letter it was stated that unless the things requested were done, the Trust Company could not "continue with the co-operation and accommodation we have given the receivers."

No further loans were made to the receiver after writing this letter. The sale of the personal assets did not occur until June 17, 1935, more than a year later. These facts are peculiarly pertinent in connection with the claim of the Guardian that no consideration passed to Roos for his action in conforming to the wish of the Trust Company.

Roos did transfer to the Roos Company and the receivers on July 9, 1934 four patents and a license upon which the Roos Company and the receivers had been paying royalties.

There was no legal obligation on the part of Roos to do this.

Mr. Sagmeister who had been up to the time of the receivership, attorney for Roos and the Roos Company and who was attorney for the receivers wrote the Trust Company on May 7th, 1934, in part as follows:

"Confirming my talk with your Mr. Conroy today, I write to advise that Mr. Henry W. Roos will be glad, in view of your suggestions of continued cooperation and accommodation, to comply with the requests in your letter of the 19th of April to the Receivers of the H. W. Roos Company.

"Mr. Roos has brought to my office three license agreements between himself and The H. W. Roos Company relating to shores and clamps, jacks and forming systems. He is making a search for his Letters Patent on shores and forming system. When he brings them to the office we will promptly have assignments thereof executed to the company."

This letter was dictated in the presence of Roos and sent to the Trust Company with his consent.

Mr. Sagmeister had been the notary upon the various assignments of pat-

ents to the daughter of Roos when the trust agreement to her was executed. It is urged that the attorney, therefore, knew of other patents than those mentioned in his letter to the Trust Company.

Mr. Sagmeister testified as follows:

"A. (continued) Mr. Conroy said the Bank was surprised to learn the patents were not in the name of the company, although the financial statement upon which credit was obtained stated that they were, and requested that these patents be now turned over to the company or the receivrs as an asset including certain other assets which we had inventoried, but were claimed by Mr. Roos.

Q. What did Mr. Roos have to say about that?

A. Mr. Roos refused to commit himself at the time, and we then left and Mr. Roos and myself returned to my office immediately and I urged and recommended to Mr. Roos that he comply with the request. He stated that he would give it further consideration, and then a few days after that—I can't recall the dates—we were called—Mr. Roos and I were called over—I can't recall whether Mr. Rummell was along or not, I don't think he was, to Mr. Dupuis' office and he practically reiterated what Mr. Conroy had said with reference to the patents not being in the name of the company and that Mr. Roos—he requested that they be placed in the name of the company, and that Mr. Roos should take all necessary steps to do this.

Q. What if anything did Mr. Dupuis say about the credit that the bank had given to the receivers?

A. Mr. Dupuis exhibited to us the company's original financial statements, and called our attention to the word patents as an asset of the company, and as I say, stated that he had not only extended considerable credit to the company before the receivership, but had also extended credit to the receivers on the receivers' certificates on the faith that the company not only owned the patents but also these assets which were in the inventory.

Q. What if anything did he say about continuing that credit to the receivers in the future?

A. He stated that he would have to withdraw the credit unless his request was complied with, and there was some discussion between Mr. Roos and Mr. Dupuis as to what might be done by the bank in case the receivership was lifted.

MR. GOLDMAN: May I ask that the witness state what was said? I would like to know what the conversation was.

THE COURT: If he remembers he can.

A. (continued) I don't remember exactly what was stated, but Mr. Roos initiated the suggestion of asking Mr. Dupuis what the bank would be willing to do if he complied with his request, and Mr. Dupuis did not commit himself but said he would feel a good deal better and happier about it, and more inclined to help if his request was taken care of.

Q. State what Mr. Roos said at this conference with regard to Mr. Dupuis' request.

A. He still did not exactly commit himself. but subsequently he came to the office and I again urgently recommended that he comply with the request, not only as I stated to him I thought it was his moral duty to do it, but that if he wanted any further help from the bank inasmuch as he was the principal stockholder, it didn't matter which was—in whose name the patents were at that particular time, especially in view of the fact that he wanted help from the bank. Now then he finally agreed to do that, and I dictated a letter to Mr. Dupuis in Mr. Roos' presence, on May 7th, in which he——

Q. Pardon me. I will ask you to state what this document marked for identification "F" is.

A. That is my letter to Mr. Dupuis after several conferences with Mr. Roos on the subject of turning over all patents to the Roos Company, and in compliance with Mr. Dupuis' request in these several conferences, and his letter of the 19th of April.

Q. You stated I believe, that this letter was dictated in Mr. Roos' presence? A. That is true.

Q. In your office? A. That is true.

MR. SEGAL: I offer it in evidence if the Court please.

THE COURT: It may be admitted as Exhibit 25.

Said letter dated May 7, 1934 having been admitted in evidence by the Court, was marked EXHIBIT 25, is hereto attached and made part hereof.

Q. (By Mr. Segal) Now Mr. Sagmeister, you stated in that letter that Roos had brought certain patents into your office at that time, or certain licenses. Did he at any time make, in his discussions with you, any exceptions as to the patents he was to assign?

A. No, he did not. My talk with Mr. Roos and my recommendation was that he comply with Mr. Dupuis' request to turn over all patents with which the company had anything to do, and he never made any exception of any kind. My understanding at least, gathered from my talk was that we were to turn over everything."

It is upon this evidence that the Trust Company seeks to estabish a contractual promise on the part of Roos to transfer to the Roos Company and the receiver all patents, over which he had control. There was not other direct evidence of such a promise. The Trust Company states in its brief:

"Perhaps the best proof of the existence of the agreement and the validity thereof is that Roos did, pursuant to such agreement, assign to The H. W. Roos Company four patents. (B. EX. 28)."

Frank J. Romell was appointed sole receiver May 23rd, 1934. The sale of the personal property of the Roos Company occurred June 17, 1934. In this order of sale appeared the following:

"All of the personal property of The H. W. Roos Company in and about its plant at No. 2036 Dana Avenue, Cincinnati, Ohio, and in various warehouses throughout the country, including, by

way of example only, all inventories, machinery, tools, patterns, dies, models, furniture and fixtures, and all patents and patent licenses (as, for example, for Rooshors, Column Clamps, Roos Speed Forms, etc.), whether in the name of Henry W. Roos or in the name of The H. W. Roos Company, or in the name of the receiver thereof, together with all trademarks and the good will of The H. W. Roos Company and the right to the use of said corporate name, but excluding cash, accounts receivable and real estate."

"* * * that the plaintiff, Henry W. Roos, and the defendant, The H. W. Roos Company, join in the execution of any assignment of patents and patent licenses * * * if called upon to do so by the receiver herein and/or The Central Trust Company." This latter order was complied with both by the Receiver and the Roos Co. Roos signed as President in the bill of sale from the Roos Co.

Roos was not declared incompetent until August 18, 1936.

There is no direct evidence that he was acquainted with the language of the order. He, however, was still a party in the case, and not yet declared incompetent.

In the proceeding in which the Trust Company sought to be relieved from the purchase of the property, the guardian of Roos sought to avoid this transfer, upon the ground of Roos' incompetency.

The trial court's conclusion to the contrary has been affirmed.

Other facts following in chronological order subsequent to those herein set forth will be found in the previous statement of the history of the case.

## IV.

### ISSUES.

These pleadings present the following issues of law and fact.

**First,** That the title to the additional patents covered by the application cannot be questioned in these receivership proceedings.

**Second,** That the Trust Company is not the real party in interest.

**Third,** That Henry W. Roos, now being an incompetent and under the guardianship of his wife, Grace G. Roos it is beyond the power of the court to make any order through which he will be required to revoke the assignment in trust to his daughter of the additional patents involved.

**Fourth.** That if the court has jurisdiction over the subject-matter of the application and has power to effect a transfer of the additional patents, then such transfer should not be ordered for the reasons: (1) that such patents and licenses never were the property of The H. W. Roos Company; (2) were never assigned directly or indirectly to the company, or the receivers; (3) were not purchased by the Trust Company as a part of the assets of the Roos Company; (4) that if a contract was made by the Trust Company with Roos, the Roos Company or the receivers, whereby Roos promised to transfer all patents including those additional patents and licenses covered by the application of the Trust Company, then such promise was made without the receipt of any consideration by Roos, or there was a complete failure of such consideration; (5) that Roos, his guardian or his trustee did nothing by which the legal or equitable title to such patents was transferred to the Company, the receivers or the Trust Company, and are not estopped to assert their interest in such patents.

**Fifth:** That the Trust Company and Baker Roos Inc., have been guilty of neglect in asserting their rights, if any, in the premises.

**Sixth:** That the Trust Company and Baker Roos, Inc., have so acted, that in all good conscience, neither should be permitted to assert any right to such additional patents and licenses.

### OPINION

**First:** All necessary parties to an adjudication of the legal and equitable title to the fifteen patents listed in the application of the Trust Company

are now before this court by voluntary appearance. This court has general equity jurisdiction on appeal in chancery cases  The court, therefore, here and now having jurisdiction both of the subject matter and the parties, there seems no valid reason after many years of litigation why this court should relegate the parties to independent actions in equity or law, when this court can at this time fully decide all the issues presented. Having taken jurisdiction, it should grant full and final relief, and terminate, if possible, further litigation. This, in fact, seems to be the real wish of all parties, they having voluntarily submitted themselves to the jurisdiction of this court.

**Second:**  The mere resale of the personal property of The H. W. Roos Company by the Trust Company to the Baker Roos, Inc., can not exclude the interest of the Trust Company in a determination of what was and what was not included in its purchase from the receiver of the Roos Company. It still is a real party in interest, since it does not appear that the Trust Company has been fully released from any liability by reason of its resale of such assets to the Baker Roos, Inc. If such latter Company is a mere subsidiary of the Trust Company, as is claimed, then this would make the Trust Company still the real party in interest.

**Third:**  Even if this Court could not require the Guardian to transfer title to the patents in question, which it is not at all certain it could not do, this court could make an order which in effect would accomplish the same purpose by decreeing that its order should for all purposes be considered a transfer of title to such patents.

**Fourth:**  (1) The patents now in question never at any time were the property of The H. W. Roos Company. (2) Such patents were never assigned directly and specifically by Roos to the Roos Company, or the receivers of this company. As to whether there was an indirect or equitable assignment thereof will be considered later in connection with the claim of equitable estoppel. (3) The evidence wholly fails to show any specific contract on the part of Roos to convey to the Roos Company or the receivers the patents now under consideration. From the testimony of Sagmeister this is obvious. The Trust Company apparently understood that all patents were conveyed, but there is no evidence that Roos at any time entered into any binding contract to convey the same.

It is to be remembered that none of these patents or licenses, either the four patents and license conveyed or the patents now sought to be reached was at any time the property of The H. W. Roos Company. They belonged to Roos personally and he could do with them as he chose. As the principal stockholder of the Roos Company, it is true he was definitely desirous that the receivers should be given every opportunity to reinstate the company if possible. Any action on the part of the trust company guaranteeing this result or definitely obligating itself to refrain from executing pressure upon the receivership would be ample consideration for the promise which it is contended Roos made. An examination of the record fails to show that the Trust Company so obligated itself in any manner which Roos could have made the subject of an action, had the Trust Company immediately insisted upon a termination of the receivership by sale of the assets. The language tendered as evidence of the existence of such obligation would not sustain such a burden if such promise were made the subject of an action on the part of Roos for damages against the Trust Company for failure to extend credit.

In the brief of the Trust Company, counsel state:

"Roos' agreement to turn over all of these patents is not only established by written evidence (B. Exs. 23 to 28). but also by the testimony of Mr. Sagmeister (B. 34-38, incl., 51 D. 28) and of Mr. Dupuis (D. 152, 153, 158)."

The written evidence referred to is the letter of Dupuis, written April 19, 1934, and the Sagmeister letter to the

Trust Company, May 7, 1934. Roos was at this time co-receiver with Romell. He did not resign until May 23rd, 1934, but there is no evidence that the attention of Roos was actually directed to the language of the Dupuis letter demanding all the patents. Sagmeister's letter of July 9, 1934 stating that all patents had been assigned was written after Roos had resigned.

Even if the letter of Sagmeister was dictated in his presence and Roos was put on notice of the Dupuis letter, demanding all patents in consideration of "continued co-operation and accommodation". such a state of facts could not be warped into a contract binding either upon Roos or the Trust Company.

There being, therefore, no promise upon the part of Roos definitely providing for the transfer of the patents now involved and there being no evidence of a binding reciprocal promise on the part of the Trust Company to refrain from pressing the claim of the Trust Company, the application of the Trust Company, based upon the specific performance of a contract to transfer the patents must fail in spite of the fact that contracts to transfer patents are enforced in equity in actions for specific performance. **37 O. Jur. 128.**

(5) The serious menace to the position of the guardian and trustee is found in a consideration of whether Roos and those claiming under him are equitably estopped to deny the title of the Trust Company and its vendee in the patents in question. Estoppel has not been pleaded by the Trust Company, and in fact it disclaims this basis for any relief to it. In its brief, it is stated:

"We have not urged equitable estoppel as a ground for recovery because Roos' agreement to turn over to the company all patents used in connection with its business made resort to this theory unnecessary. By virtue of this agreement the company became, in equity, the owner of the patents, which subsequently passed to The Central Trust Company on the Receivers'

sale. Since the company was the owner of these patents, it is obviously unnecessary for the bank to base its claim on the ground that Roos is estopped from claiming ownership. Nevertheless, equitable estoppel is an alternative ground of recovery which we shall briefly discuss here in view of the fact that the issue has been injected into the case by appellant."

The facts and pleadings, however, undoubtedly do present this issue and the court would fail in its duty if it avoided such issue, merely because of the attitude of the Trust Company.

This doctrine of equitable estoppel has been repeatedly employed in matters affecting title to real estate. In view of the recording provisions of the Federal law as to patents, the similarity to real estate transactions is apparent. The rule and a full consideration thereof are set out in an exhaustive note in 50 A. L. R. 668. The rule is there stated as being:

" 'Where a man having an interest in property stands by and sees another man dealing with that property, as owner, with another person who is ignorant of the want of title in the person with whom he is dealing, equity will bind the man who stands by.' "

" 'There is no principle better established in this court, nor one founded on more solid consideration of equity and public utility, than that which declares that if one man knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel.' "

" 'In many instances a man may innocently be silent; for, as has been often observed, 'aliud est tacers, aliud celare'. But in other cases a man is bound to speak out; and his very silence becomes as expressive as if he had openly consented to what is said

or done, and had become a party to the transaction. Thus, if a man having a title to an estate which is offered for sale, and, knowing his title, stands by and encourages the sale, or does not forbid it, and thereby another person is induced to purchase the estate, under the supposition that his title is good, the former, so standing by and being silent, will be bound by the sale; and neither he nor his privies will be at liberty to dispute the validity of the purchase.'"

See also authorities noted p. 228, id as to judicial sales.

However, where there is a record title of the property, the rule is stated:

"The falure of a person to disclose an interest which he holds in real property, when he learns that another person is proposing to sell or mortgage the property, will not estop the former from asserting his interest against the vendee or mortgagee, if its existence was ascertainable by an examination of the public records." p. 744, id.

It is true an examination of the patent records would have disclosed the existence of the fifteen patents now claimed, all of these patents bear dates antedating the sale of the personal property of the H. W. Roos Company, June 17, 1935.

"The duty of examining public records is especially incumbent upon a person who purchases property at a judicial sale, because in this instance the duty is based not only on general ground, but also on the consideration that the maxim, 'caveat emptor', applies with full force to a transaction of this character." p. 747, id.

But was the Trust Company charged with this duty of search? We think it will appear that it was not for there is an exception to this exception to the rule, stated as follows:

"It is well settled that the doctrine stated at the commencement of §20, supra, is not applicable to cases in which the party having the undisclosed interest misled the party claiming the benefit of the estoppel by some act of a positive or affirmative quality, which was calculated to produce a wrong impression." p. 750, id.

"(1) That the party alleged to be estopped was chargeable with actual fraud which influenced the conduct of the other party in respect of the transaction in question. Such fraud may be inferred from the special circumstances under which the instrument in question was recorded. But the most numerous class of cases which illustrate its effects consists of those in which the evidence shows that the party alleged to be estopped had made an explicit misstatement concerning his interest in the property in question." p. 751, id.

"(2) That his failure to disclose his interest in the property occurred under circumstances which rendered his silence 'tantamount to actual misrepresentation'." p. 753, id.

And, again, it is stated, at p. 759:

"There is considerable authority for the theory that a party who remains silent when a transaction affecting property in which he holds an interest is being consummated in his presence is not entitled to claim the protection of the doctrine of constructive notice from records, if he knew that the party who was proposing to deal with the property was in point of fact ignorant of the existence of his interest, and was acting in the assumption that it did not exist."

This brings back a consideration of those facts heretofore dealt with in determining whether or not there was a binding contract upon Roos to convey the patents now involved and, at the risk of redundacy, these facts must be here carefully reviewed.

Roos knew that he was the record owner of all the patents and licenses under which the Roos Company operated, and that that Company nor any

other could successfully manufacture the appliances offered by the company in the market without a privilege to use these patents and licenses. He knew also that back in December, 1932, only three months previous to asking for a receiver for his company, he had assigned sixteen of these patents in trust to his daughter. He and those claiming under his company concealed this until by some force of circumstances, they were forced to divulge it. He knew also that the Roos Company had received credit from the Trust Company upon financial statements which would cause any one to believe that the company owned the patents, under which it operated. The Dupuis letter was written to the receivers at a time when Roos was still one of those receivers. It must be presumed that he was familiar with it or would ask to see it when Sagmeister referred to it in his letter to Dupuis. This is, however, a different matter from making it the basis of a binding promise. He knew also that after transferring the four patents and license the Trust Company did withhold any pressure upon the receivers. He is charged with notice of the order of the court in a proceeding in which he is a party and he certainly was familiar with the terms of the bill of sale of the Roos Company, which he signed as president. In this bill of sale appears the following:

"All of the personal property of The H. W. Roos Company in and about its plant at No. 2036 Dana Avenue, Cincinnati, Ohio, and in various warehouses throughout the country, including by way of example only, all inventories, machinery, tools, patterns, dies, models, furniture and fixtures, and all patents and patent licenses (as, for example, for Rooshors, Column Clamps, Roos Speed Forms, etc.), whether in the name of Henry W. Roos or in the name of the H. W. Roos Company, or in the name of the Receiver thereof, together with all trade-marks and the goodwill of The H. W. Roos Company and the right to the use of said corporate name, but excluding cash, accounts receivable and real estate."

Roos knew that all of these patents were necessary to the manufacture of the improved appliances, he knew that the Trust Company was purchasing the personal assets, including good will and that neither they nor any vendee could manufacture these improved appliances without all of the fifteen patents now demanded.

A purchaser of the entire Ford industry would progress as far as the vendees in this case if, upon sale of the Ford industry, the purchaser were to obtain only the Model T patents, and be excluded from the use of Model A and V8 modifications and improvements.

The claim of the guardian and trustee that the rule of equitable estoppel is eliminated in application to the instant facts by reason of the record of the patents is untenable, for the reason that here patents recorded were not sold as such, but the very existence of such patents was actually concealed. Such a claim might be tenable if the fifteen patents had been listed separately in the bill of sale. Then some duty might have rested upon the purchaser at the receivers' sale to search the patent records to ascertain if such patents were in the name of Roos or his company. In the instant case by a long course of unjustified reticence and secrecy indulged in by Roos, his guardian, and his trustee, the purchaser was led to believe that no patents other than the four transferred existed. Any reasonable person would have been so led astray.

Again, the very value placed by the guardian and trustee upon these patents now in dispute indicates that they are indispensable to the carrying on of the industry purchased by the Trust Company.

**Fifth:** No neglect or laches is found in the Trust Company or the Baker Roos, Inc. The Roos representatives carefully concealed the existence of these patents until the Trust Company became aware of their existence long after the receivers' sale. Neither Roos, the guardian nor trustee divulged the existence of the gratuitous trust agreement until the hearing to determine

the ownership of the fifteen patents was in progress in the trial court in 1938.

It does not appear that either the Trust Company or The Baker Roos, Inc., were guilty of unconscionable delay, or that the Roos representatives substantially changed their position or are entirely free from inequitable conduct in the premises. Upon these elements depends the claim of laches.

Sixth: The charges of inequitable conduct on the part of the Trust Company and Baker Roos, Inc., also fail. The Trust Company only responded, in demanding the transfer of all patents and licenses, to a situation of misapprehension which had been created by the Roos Company (over which Roos had complete control) in rendering statements leading the Trust Company into the belief that all patents incident to the Roos industry were in the name of the company. That Roos need not have complied with the demands of the Trust Company is beside the point. He led the Trust Company again into the belief that he had fully complied with the demands. The time for resistance and assertion of title was then and there. Roos evidently considered it to his best interests to make a partial concession which he caused the Trust Company to think was a full concession, all to its irreparable damage.

## CONCLUSION.

From the foregoing, the conclusion is inescapable that Roos, under whom the appellant guardian and the trustee claim, acted in such a manner as to estop them from asserting rights derived from him against the Trust Company, or its vendee, Baker Roos, Inc.

A decree, therefore, may be presented requiring the guardian and trustee to join in a transfer of the patents covered by the application of the Trust Company within thirty (30) days of the date of such decree, or in the event that such order be not complied with by such time. then the decree shall constitute a transfer of title to such patents from Henry W. Roos, the H.

W. Roos Company, the guardian and trustee and the receiver, to The Central Trust Company, and all persons claiming under said Henry W. Roos or the Roos Company are forever precluded from asserting any title thereto or interest therein and should the said Henry W. Roos be restored to competency, then he shall be forever so precluded from asserting any right, title, or interest in such patents.

MATTHEWS, J., concurs.
HAMILTON, PJ., dissents in separate memorandum.

HAMILTON, PJ., dissenting:

I dissent from the opinion of the majority of the court in this case, for the reason that I do not find anything in law or equity to sustain it under the facts of the case.

In view of the fact that the case is one that leads to extended discussion, there is no point to be gained by the filing of an extended opinion, and I will content myself with briefly stating the main reasons why I dissent, and why I cannot concur in their conclusions.

At the outset, it appears to me that the issue presented involves a trial of the right of property in a receivership case, which, it has been frequently held, is not maintainable.

The jurisdiction of the court to determine the question in a receivership case is not stressed by the appellant, since they were parties to the receivership action. But, however that may be, it is a matter of jurisdiction of the court to hear and determine the disputed question not involved in the receivership. A waiver could not give the court jurisdiction over the subject-matter, if it did not have such.

The majority opinion is based solely upon the doctrine of equitable estoppel, which deals with law and equitable principles, which is proper in a proceeding by a creditor to set aside a transfer of property as in fraud of creditors. That is not the case here.

Henry W. Roos mentally and physically failed and is represented here by a guardian. He developed a large busi-

ness and secured many patents on appliances used in the business and became the owner thereof. These patents were made a matter of public record, which the courts have held are on a plane with public records affecting the title to real estate, and, therefore, constitute notice to the world. He leased four patents and a license held by him to his Company. It must be remembered at all times he was and remained the sole owner of the patents. The depression came on and the business failed and went into the hands of receivers. During the receivership, the company sought to negotiate a loan with the appellee bank, and the bank in looking over the assets of the company found that the company did not own the four patents and the license, but only had a license to use the same. Thereupon, the bank suggested that Roos assign his patents to the company in order to strengthen its assets. This Roos was willing to do and did assign the four patents and the license, which, as above stated, were only licensed to his company, and so carried on the books. Thereupon, the bank was entirely satisfied and notified Roos of this fact and made the loan, which loan was afterwards paid off.

The Bank later loaned money to the receivers, who undertook to operate the business, and the bank became a creditor thereby. The receivers gave up trying to operate the business and an order of sale for all the assets of the company was made and the affairs of the company were being wound up. At the receivership sale, the bank purchased the assets of the company.

It will be noted that there was nothing up to this time to indicate that the fifteen patent improvements on the appliances used by the company were otherwise than personally owned by Roos. He had done nothing toward transferring any title whatsoever to the fifteen patents in question here. In fact he was under no obligation whatsoever to assign to the company the four patents and the license, but to aid his company to continue in business was his great desire. He did assign the four patents and the license to the

company. And a loan was made at that time.

At the receivership sale, the Bank resold the assets so purchased to what is known as Baker Roos, Inc., a concern in Indianapolis, Indiana. The bank then discovered that there were some patents, or patent improvements, which were not assigned, and were not a part of the assets. Thereupon the bank undertook for the benefit of the Baker Roos, Inc. and itself to get possession of the fifteen patent improvements, which the bank and the Baker Roos, Inc., thought important. So they undertook to fasten on Roos an obligation to transfer the fifteen patent improvements, some of which had been patented by Roos after the receivership, as having been transferred to the company prior to the receivership.

It is not shown there was any consideration or obligation on the part of Roos to do so, or even to transfer the four patents and one license that were transferred. It appears that Roos some time during the progress of the Company assigned the fifteen patent improvements to his daughter, as trustee, for his benefit; he to have the benefit of the fifteen patent improvments, if any resulted therefrom. This probably is what gave rise to the idea that Roos was guilty of some fraudulent transaction. If there was any, the proper proceeding would be one on the part of creditors to set aside the conveyance of property as in fraud of their rights.

This case has some features of an intent to compel specific performance and the transfer of property, for which they never paid any consideration, and concerning which there was never any promise on the part of the owner to transfer the property.

The majority opinion decides the case on the proposition that Roos is estopped to deny he never parted with title to the property.

Probably the only ground on which the appellees base their claim is, although the company only had a license to use the four patents and one license, and they had no knowledge of the fifteen patent improvements, some

of which had not even been patented, that the bank, when it said to him "we will feel better when you make an absolute assignment of all the patents", and they used the word "All", but when they used that word they were only discussing the four patents and the license at the time, and did not know of the fifteen patents, although they were a matter of public record, of which they were bound to take notice. But they were entirely satisfied when the specific assignment was made of the four patents and the one license.

How it could be claimed that this would result in transferring all title is more than I can understand. Wherein does the rule of equitable estoppel apply as to Roos? What is it that he was bound to do that he did not do? From claiming property which had never been the subject of transfer before? He did all the bank asked of him in assigning the patents and the license, in which the company had no interest. Was he silent when he ought to have spoken? Moreover, his patents were a matter of public record, of which the world is bound to take notice. That he had such patents, there was no reason for disclosing. In any event, they were made a matter of public record.

Under these briefly stated facts and conditions which might be greatly augmented, were it purposeful to do so, enough has been stated to indicate the doctrine of equitable estoppel has no place in the case, and neither has it been established that a court has jurisdiction in receivership case to try the title to property.

It is entirely inferable from what has taken place in this case that the appellee bank is undertaking to secure these patent improvements from Roos, for the benefit of Baker Roos, Inc., in which Company it is more or less interested, growing out of the resale of the assets of the H. W. Roos Company to Baker Roos, Inc., and is an attempt to get the patent improvements from Roos, the inventor, who has mentally and physically failed, without paying any consideration therefor, notwithstanding Roos had at all times acted in good faith with the Bank.

I find the equities to be with the appellant.